UNITED STATES of America

v.

Dewey BOBBITT, Appellant.

No. 24275.

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1971.

Decided Sept. 24, 1971.

Petition for Rehearing Denied Nov. 18, 1971.

---

Mr. William J. Garber, Washington, D. C., for appellant.

Mr. Kenneth Michael Robinson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Robert S. Bennett, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

This is an appeal from a judgment sentencing appellant to concurrent terms of three to twenty years imprisonment for second degree murder and three to ten years for carrying a pistol without a license.

We affirm the murder conviction and reject appellant's claim that the trial court erred in the admission of evidence regarding a shotgun attack on decedent occurring twelve years before the shooting involved here.[1] Since appellant's second contention, that there was insufficient evidence to sustain conviction on the weapons count, raises a substantial question, and the sentence is only concurrent, we vacate the judgment on the weapons count.

### I. Testimony

The testimony at trial revealed that around 9 o'clock in the evening of April 5, 1969, Mrs. Helen Gill was shot to death in her home at 25 S Street, N.W. Officer Milton Early of the Metropolitan Police Department testified that he and Officer John Harvey arrived on the scene a few minutes later, and saw appellant standing in the doorway of Mrs. Gill's home. Appellant told the officers that he had called the police and an ambulance because he had "shot the woman * * * over there * . * * [with the gun] on the desk." Officer Early found a loaded pistol on a desk above

the body in the hallway. He testified that there were no signs of alcohol, and no signs of a struggle. The son of the deceased testified that. appellant and the deceased had been living together ("as common law man and wife") for a number of years, though not at the time of the incident.

Prior to the defense case the issue arose whether, if defendant testified, he would be subject to impeachment by prior convictions. The prosecutor represented that there would be no impeachment by prior convictions, but added that if the defendant testified that the shooting was a mistake or accident, then the prosecutor would show that appellant had threatened the decedent with a shotgun twelve years earlier. Defense counsel did not object to this position. The trial court, finding that the incident was relevant on the issues of motive and mistake (Tr. 34), ruled that it could be used on cross-examination.

This was appellant's testimony: He had lived with Helen Gill from 1954 until about six months prior to her death. On the night of April 5, 1969, he went to her house, at her request, to pick up some mail and a union book. She invited him in and served him a couple of beers, while she herself drank rum and beer. He gave her $27.00 for an insurance premium and started to leave. She asked him where he was going, and he replied to the barber shop. At that point, according to appellant, Mrs. Gill turned around with a gun in hand and said "You ain't going anywhere." He testified that he grabbed the gun and in the ensuing struggle it went off and she slumped to the floor. He picked up the pistol, placed it on the desk, and called an ambulance and the police. He admitted that the pistol was his.

On a hearing held prior to cross-examination of appellant, the court deter-

1. Appellant also claimed that police obtained an oral statement from him, following his arrest, without properly informing him of his *Miranda* rights, and that the trial court erred in permitting use of this statement to impeach appellant

on cross-examination. Appellant has since withdrawn this contention in view of the Supreme Court's ruling in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

mined that the prosecutor could impeach appellant through a statement made by him to the police following his arrest,[2] but that the statement could not be used as evidence establishing the Government's case. The prosecutor then asked appellant whether he remembered telling a police sergeant that he had shot Helen Gill and that she did not have a gun in her possession when she was shot. Appellant disavowed these statements. The judge instructed the jury to limit its consideration of the alleged prior statements solely for the purpose of evaluating appellant's credibility, and that it must not consider the statement as establishing the truth of any fact contained in the statement. In rebuttal the Government called Sergeant O'Brien to testify concerning his conversation with appellant on the night of the murder.

As to the major point before us for decision, the transcript is spare. After appellant disavowed his alleged statement to the police sergeant, the prosecutor asked him whether he had ever threatened decedent with a shotgun. Appellant admitted this. He later added, on re-direct, that the incident occurred in 1956.

## II. *The Shotgun Incident*

### A. *Admissibility as Evidence*

■ Appellant claims that the twelve-year-old shotgun incident should not have been admitted in evidence. A basic principle of long standing in our law makes it clear that evidence of one crime is inadmissible to prove disposition to commit crime in general. However, proof of an earlier crime may be admissible if there is a real connection with the crime now charged, beyond the mere contention that both crimes spring from a vicious or criminal disposition. Wakaksan v. United States, 367 F.2d 639, 645 (8th Cir. 1966). This court has pointed out that a prior criminal act may be admissible because of relevance, e. g., to issues of motive; intent; absence of mistake or accident; identity; and common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other. Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85, 90 (1964).

Appellant contends that this particular incident, because of its remoteness, could have no bearing on motive and mistake in this case. This problem is not without difficulty. The authorities indicate that the admissibility of other crimes may depend on the purpose for which it is admitted—whether, for example, to show that the accused committed the act charged, or merely to show that, if he did it, he had the knowledge or intent required for conviction under the statute. McCormick states that "courts are stricter in applying their standards of relevancy when the ultimate purpose of the state is to prove identity, or the doing by the accused of the criminal act charged than they are when the evidence is offered on the ultimate issue of knowledge, intent or other state of mind."[3]

Where, as here, the defendant was on the scene of a shooting, and the only issue is who pulled the trigger, and whether it was an accident, the court does not have the kind of issue of "identity" that imposes an unusually rigorous requirement as a condition to admission of evidence of prior criminal acts. This issue should not be considered on the same ground as that which arises, for

---

2. Immediately after the shooting appellant was taken to the Homicide Squad. Sergeant O'Brien advised him of his rights, and appellant refused to sign a statement or call an attorney. According to Sergeant O'Brien, appellant stated that he understood his rights, and then gave the police an oral history of how the decedent had used, abused and nagged him for sixteen years. Appellant stated, again according to the Sergeant, that when she began to nag him that evening, he pulled a pistol from his coat pocket and shot her point-blank in the head.

3. C. McCormick, Handbook of the Law of Evidence, 331 (1954).

example, in a case where several possible aggressors might have committed the crime.

■ The question before us is subject to the consideration giving the court greater discretion for admitting other crimes on the basis of materiality to the issue of motive. The prior relationship between the parties is obviously material in determining what motive the defendant might have had to shoot decedent. Here, where there was other evidence that there had been "bad blood" between appellant and the deceased, his former common-law wife, continuing over a period of years, the judge did not abuse his discretion in admitting evidence of a prior threat with shotgun.

Whether a criminal incident twelve years previous is too stale to be received in evidence is a separate, though interrelated issue. The period does not necessarily make the evidence too remote even when offered on a proffer of showing identity. See, *e. g.*, People v. Burns, 109 Cal.App.2d 524, 241 P.2d 308, 242 P.2d 9 (1952) (Defendant admitted being at scene of death; thirteen-year-old incident, showing similar modus operandi, not too remote). We cannot say that the admission of the 12-year-old incident on the issue of motive constitutes an abuse of the discretion that must be given to a trial judge.

B. *Claim of Plain Error in Omission of Limiting Instruction*

We turn to the question whether the trial court committed plain error in failing to give a limiting instruction concerning the evidence of the past shotgun incident.

Defense trial counsel sought no instruction. For all we know he may have rejoiced that the trial judge did not make this evidence the subject of an instruction, for any such instruction would not only have presented the view of the trial judge that it was relevant to show motive but would have emphasized the significance of the evidence in the mind of the jury.

Appellate counsel makes no reference to the lack of limiting instruction in his Statement of the Issues Presented for Review. But in his brief presentation of the issue of the admissibility of the evidence there appears the following (Br. 15–16):

"Not only was the evidence admitted, but nowhere in the Court's charge did the Court inform the jury what the purpose of the evidence was. Therefore, the jury was left with no guidelines as to how to evaluate the evidence. Note: United States v. Bussey, *supra*, slip opinion pages 7, 8."

[See (139 U.S.App.D.C. 268) 432 F.2d 1330 (1970).]

\* \* \* \* \* \*

"It is submitted on appeal that there was error in allowing the Government to cross-examine appellant concerning a twelve year old incident involving alleged criminal conduct on the issue of motive and it was also error for the Court to have allowed the jury to consider the evidence with no instructions."

In view of this skimpy, almost offhand, presentation of the issue, we have in the interest of justice tried to discern the strongest claim or claims that could have been advanced for appellant.

■ 1. We shall begin by considering a possible claim, based on United States v. McClain, 142 U.S.App.D.C. 213, 440 F.2d 241 (1971), that the trial judge erred in failing to instruct the jury to the effect that the jury could not consider the shotgun threat as evidence of appellant's motive or absence of mistake unless it first determined that he had done the shooting. This would involve a complaint of the trial court's failure to instruct the jury that this incident should not be used as evidence that appellant committed the act of shooting. We think defendant was not entitled to such an instruction in this case.

This point requires us to refine the issue beyond the initial point of admissibility of evidence, discussed above, to the question of limitation on the use of

the evidence. As perspective for our discussion we note the various grounds on which other crimes may be admitted as substantive evidence. McCormick provides a helpful analysis. He states that such crimes are relevant to show the following, among other things: (1) To complete the story of the crime on trial by proving its immediate context of happenings near in time and place, such as to be characterized as the "same transaction" (sometimes "res gestae"). (2) "To prove the existence of a larger continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. This will be relevant as showing motive, and hence the doing of the criminal act, the identity of the actor, and his intention, where any of these is in dispute." (3) "Signature" crimes—other crimes so nearly identical in method as to earmark them as the handiwork of the accused. (4) Propensity for illicit sexual relations with the particular person concerned in the trial. (5) To show, by similar acts, that the act on trial was not unintentional or accidental. (6) "To establish motive. This in turn may be evidence of the identity of the doer of the crime on charge, or of deliberateness, malice, or a specific intent constituting an element of the crime." (7) "To show, by immediate inference, malice, deliberation, ill-will or the specific intent required for a particular crime." (8) "To prove identity * * * [A] need for proving identity is not ordinarily of itself a ticket of admission, but * * * the evidence will usually follow, as an intermediate channel, some one or more of the other theories here listed"—for example (2), (3), or (6).[4]

A prior incident which tends to show a common scheme or plan, or signature crime, by its very nature tends to show directly that the defendant did in fact commit the act charged in the indictment. When the prior evidence is relevant to defendant's state of mind it is relevant by immediate inference only to the mental element of the offense, assuming that there is evidence tending to show defendant committed the physical act. But there is a category of cases where the evidence of a prior criminal action is related to a state of mind, such as motive, which is itself so closely related to proof of the commission of the act that it must be recognized that the prior crime is probative of identity as well as state of mind.

To say that the evidence of a prior offense is material only to the state of mind with which the act was committed, if the jury finds independently that it was committed, but it may not be taken into account in ascertaining whether the act was committed, requires mental gymnastics of a dextrous kind. If there were direct testimonial evidence of motive, no one would suppose this could not be taken into account in appraising whether defendant committed the crime. If there is a limitation imposed by law for the case where the evidence of motive is supplied by proof of a prior criminal act, it must stem from the fear that the jury will in fact use the testimony of motive as showing a *general* criminal disposition that the jury regards as material to identity, even though they have not been so instructed or have been instructed to the contrary.

We do not now consider the case where identity is in issue in the sense that it is denied that defendant was at the scene of the crime at the time involved. When that is not denied the showing of motive is likely to be substantially and directly material to the issue of whether defendant committed the criminal act. The standard of relevance may vary, as McCormick notes, with the purpose of proof and the probabilities. In the present case, the fact of defendant's prior shotgun threat tended to show motive and state of mind,—tended to show that at least on one occasion his hostility to the deceased was so intense as to lead him to resort to shooting. In

---

4. C. McCormick, Handbook of the Law of Evidence, 328–30 (1954). He also lists two other cases for admissibility of evidence of prior crimes, which he identifies as (9) admissions by conduct; and (10) impeachment.

our view this is material evidence in this case that it was defendant, admittedly involved in a scuffle, who reached for the pistol, and not deceased.

2. In the light of these comments we focus on the question as to what instruction, if any, should have been given as an explanation to the jury of the materiality of the evidence. There are instances where the failure to limit the jury's use of other crimes is error and may even be plain error. The most obvious occurs where the other crime is introduced, not as substantive evidence, but solely as impeachment. Jones v. United States, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967). In that situation the evidence by definition has no direct bearing on any substantive issue at trial, but solely on the credibility of a witness on the stand. Therefore the trial court has a duty to see that the jury does not cross the boundary between credibility and substance in making its inferences from the prior act. He must not only act sua sponte, whether or not request is made, but should give an appropriate instruction immediately before or after the impeachment evidence is submitted, to confine its effect before the evidence moves on to other matters.

We may assume for discussion that this principle also applies where the evidence as to other crimes is presented only by way of rebuttal, as e. g., contradicting the defendant's alibi testimony as to his location at the time of the crime. This was the fact situation before the court in United States v. Bussey, 139 U.S.App.D.C. 268, 432 F.2d 1330 (1970), although it may be noted that Bussey did not say that the failure to give a limiting instruction was plain error but only that it showed the judge failed to provide a curative for the error he made in admitting testimony of a crime when a less prejudicial structure could have been devised, by permitting testimony of defendant's presence at a place different from that set forth in his alibi without identifying such presence as part of a crime then in progress.

This principle was also applied in McClain. In McClain a panel of this court, one judge dissenting, reversed appellant's conviction on the ground of plain error in the trial court's failure to instruct the jury to consider evidence of a prior assault only on the issue of defendant's malice, and then only after it had found that defendant committed the act charged.

The court said in McClain that the principle of Jones was controlling. Now since Jones related to the special case of impeachment of veracity it was obviously not controlling by its own weight. What McClain must fairly be taken to have intended is that the principle of Jones was applicable because of the situation in McClain, which was as follows: Defense counsel strenuously objected to the admission of the prior incident and the prosecutor, during colloquy at the bench, expressly stated that he did *not* want to use the incident as evidence of defendant's homicidal act, but only as evidence that, if he committed the act, he did so with malice. The trial court excluded the evidence as prejudicial. But when defense counsel elicited testimony as to the prior assaults by defendant on decedent, during questioning of defendant's daughter, the court itself stepped in and questioned the daughter about the prior incident. In explaining its action to counsel, the court stated that it had previously excluded the evidence, even on the grounds for which it was offered by the Government, but felt bound to honor the Government's proffer once defense counsel had opened the area.

Since the prejudicial impact of the evidence outweighed its probative tendency, as the court had ruled, the subsequent occasion for its admissibility when defendant opened the door required, for an avoidance of this prejudice, an appropriate limiting instruction focusing on the Government's limited purpose in making the proffer,—not to show that defendant did the act, but that if he did so it was with malice.

■ However where as here the prior act is introduced on a substantive issue *(e. g.,* motive) and there is no contest as to defendant's presence and opportunity, the jury is not to be automatically prevented from drawing the further inference that it was defendant who committed the crime. There is therefore no applicability for the rule of *Jones* and *McClain* requiring a special instruction of lack of relevance to whether defendant committed the act charged.

■ 3. Even where the prior crime has substantive significance, it may be relevant to a particular issue that must be delimited in order to avoid prejudice. Obviously the jury should not be given an instruction that permits it to infer a general predisposition to commit crime. And where the pertinent substantive issue is susceptible of delimitation, an instruction may be appropriate to avoid improper transfer to a determination of all the elements of offense charged. That a person was once convicted of selling narcotics is some proof that he knew the physical characteristics of narcotics and could distinguish them from other substances, but in the absence of, say, a peculiar modus operandi, it would not by itself have materiality as showing that he sold narcotics on a later occasion. Thus in Medrano v. United States, 285 F.2d 23 (9th Cir. 1960), the defendant was convicted of violating 21 U.S.C. § 174 through sales of heroin. On appeal the Ninth Circuit held that evidence of prior narcotics transactions was relevant to show knowledge, intent, and absence of an innocent purpose. In doing so, however, it noted that the trial court had expressly charged the jury not to consider these prior events as evidence that defendant committed the alleged acts.[5] Such a charge is appropriate in cases like the narcotics cases where the defendant is denying both the act and the intent, where the past pattern of criminal acts is material only to intent, but the existence of knowledge is not in and of itself material as evidence of the commission of the act. Those cases involve different considerations from the case at hand. The same limiting instruction would not be required where the evidence of the other narcotics offense is admissible not only on the issue of knowledge but also on the issue of identity, as in United States v. Smith, 343 F.2d 607 (2d Cir. 1965).

An instruction would also be necessary in cases where a prior sexual attack on complainant is used to show the defendant's desire for sexual relations with this particular person. The use of such evidence for this purpose stands as an exception to the general rule prohibiting use of prior crimes as evidence of propensity. But defendant is entitled to a limiting instruction that while the jury is permitted to infer from prior incidents that defendant had a desire for sexual relations with the complainant, it is not permitted to infer from this fact that he had a desire or intent to go further and to overcome any and all resistance in order to achieve those relations. *See* United States v. Huff, 143 U.S. App.D.C. 163, 442 F.2d 885 (1971).

In the cases just discussed the point established by the prior crime—the knowledge of heroin; the desire to have sexual relations with complainant—is not of itself material to prove commission of the act charged in the indict-

5. The trial judge charged as follows: (285 F.2d at 26, n. 2)

"If the jury should find beyond a reasonable doubt from other evidence in the case that the accused did the acts charged in the particular count under deliberation, then the jury may consider evidence as to an alleged earlier act of a like nature, in determining the state of mind or intent with which the accused did the acts charged in the particular count. And where proof of an alleged earlier act of a like nature is established by evidence which is clearly conclusive, a jury may draw therefrom the inference that in doing the acts charged in the particular count under deliberation, the accused acted wilfully and with specific intent and not because of mistake or inadvertence or other innocent reason."

ment, *e. g.*, sale of heroin; sexual relations with force. In the case at bar, however, the prior incident showing defendant's hostility was material to the issue of motive to commit the crime now charged and that fact, if found by the jury, is material—with undisputed and independent evidence of defendant's presence and opportunity—to the issue of the commission of the substantive crime.

██ 4. We now turn to the possibility of a different contention, put forward in the dissent, that it was plain error for the judge to have failed to instruct the jury that the evidence should not be given consideration on the basis that it indicated defendant was a generally culpable person.

Obviously if such an instruction had been requested it should have been given. But we do not think the omission in the absence of a request was plain error. If the omission was plain error here, it was plain error in every case where evidence of crime is admissible. For although there are a number of specific rules permitting introduction in evidence of prior crime, as appears from *Drew*, McCormick and the authorities cited in II, A, such evidence is never admissible as indicating the defendant is a generally culpable person. But we have never seen a glimmer of a requirement in the cases that the judge initiate such an introduction.

We have already noted the possibility that defense counsel was not displeased, from a tactical point of view, with instructions that omitted any reference to and hence emphasis on the evidence of prior crime. He may well have supposed that the skimpy reference to a shotgun incident twelve years previous would not of itself loom large in the mind of the jury.[6] As matters stood there might be argument by counsel but there would be no discourse to the jury by the judge advising it that it might consider the prior incident as showing, first, motive, and then that it was defendant who pulled the trigger. We see no basis for finding the trial court committed plain error in failing to initiate an instruction developing the purpose for which it could consider the prior incident.

### III. *The Weapons Count*

██ Appellant also contends that the evidence was insufficient to sustain his conviction of carrying a pistol without a license. He states that he had left the pistol at Mrs. Gill's house when he moved out and did not see it again until she assaulted him with it on the night of her death several months later. When the police came to the scene, he told them he had shot decedent with the gun "on the desk".[7] That is not inconsistent with this contention. The Government introduced no other evidence that appellant had possession of the pistol before this night. The failure of the prosecution to prove that the defendant brought the murder weapon with him may establish a shortfall in proof of the elements of premeditated murder. Hemphill v. United States, 131 U.S.App.D.C. 46, 48, 402 F. 2d 187, 189 (1968). It may also be material on the issue of whether the proof establishes the kind of possession requisite for carrying a pistol without a license.

Appellant's contention raises difficult factual and legal problems, including the manner and duration of possession required for conviction under the statute. However, we need not resolve these questions in this case. The sentences in this case were imposed concurrently, on convictions arising out of the same sequence of events. In view of these facts, and the fact that we have affirmed the murder conviction, we think

6. If the judge is required to initiate a clarifying instruction presumably its issuance is not subject to defendant's veto.

7. The testimony of Sergeant O'Brien, that appellant confessed to shooting Mrs. Gill after pulling the gun out of his own pocket was admitted solely for purposes of impeachment, because of the court's doubts concerning the constitutionality of the confession.

the public interest is furthered by halting the devotion of scarce judicial resources to this appeal. In the interest of the administration of justice, we vacate the conviction on the weapons count. United States v. Hooper, 139 U.S.App. D.C. 171, 432 F.2d 604 (1970).

So ordered.

FAHY, Senior Circuit Judge (dissenting):

The failure of the trial court to give a limiting instruction to the jury on the use it could make of the 12 year old shotgun incident in which appellant threatened the deceased constituted in my opinion reversible error.

The Government's case-in-chief consisted of the testimony of three witnesses, covering 23 pages of the transcript. The son of the deceased testified that his mother and appellant had been "common law man and wife for a number of years." Dr. Rayford, who performed the autopsy on the body of the deceased, testified that the bullet which caused her death entered her forehead. Officer Early testified that he and another officer responded to a call about the shooting and observed appellant standing in the doorway of the house when they arrived. The officer then said:

[W]e asked him did he call the police, and he said, "Yes." He stated that he shot the woman and we asked him where, and he said, "Over there," and we saw her laying on the floor, and we said, "Where is the gun," and he said, "On the desk."

The above was the Government's case-in-chief, aside from a certificate admitted in evidence which indicated that appellant did not have a license to carry a pistol.

Appellant testified in his defense, in substance as set forth in the court's opinion. Prior to his testifying the question arose whether, if appellant said the shooting was a mistake or accident, the prosecution would be allowed to show he had threatened the deceased with a shotgun 12 years earlier. After an extended colloquy the trial court ruled that the prosecution would be permitted to inquire about the shotgun incident because it "reflects motive." Subsequently, on his cross-examination, appellant admitted the incident. The court, nevertheless, failed to instruct the jury that this evidence could be considered by the jury only as bearing on motive.[1]

The court in its opinion recognizes the long standing principle that evidence of one crime is inadmissible to show a general disposition of an accused to commit crime. Yet the 12 year old incident was before the jury without a limiting instruction, in violation of this principle.

The shotgun incident was admissible, as the court says, to show appellant's previous, and possibly continuing, hostility toward the deceased, which in turn bore on the question whether appellant committed a criminal homicide.[2] See 1 Wigmore, Evidence § 117 (3d ed. 1940); 2 id. §§ 385–397. The court assumes, however, that the instruction which appellant would have wanted was "that the jury could not consider the shotgun threat as evidence of appellant's motive or absence of mistake unless it first determined that he had done the shooting." The assumption I think is a mistaken one. True, such an instruction would be proper, and indeed necessary, if the evidence of the earlier incident had been admitted to prove only intent. United States v. McClain, 142 U.S.App.D.C. 213,

1. It is not disputed that the shotgun incident was admitted solely to show motive.

2. I would be reluctant as a trial judge to admit in evidence a 12 year old incident as relevant to the issue of motive. Its attenuated value as probative evidence when so remote from the act charged is in my view outweighed by its inflammatory effect on a jury. Recognizing, however, the extremely broad discretion given to trial judges in this area, I am constrained to conclude that its admission in evidence was not reversible error. See 2 Wigmore, Evidence § 396 (3d ed. 1940).

440 F.2d 241 (1971); United States v. Gay, 133 U.S.App.D.C. 337, 410 F.2d 1036 (1969); 2 Wigmore, *supra*, §§ 300, 302, 363. The evidence, however, was admitted to show a motive on appellant's part to commit the act charged, and, therefore, as evidence that he did so. The proper limitation on its use by the jury in this situation was that it should be considered only insofar as it evidenced a previously existing hostility on the part of appellant toward the deceased, which in turn could be considered on the question whether such hostility still existed at the time of the act charged; and if so, the instruction should continue, the jury could consider the existence of such hostility at the time of the act charged in determining the critical issue whether appellant in fact committed the act charged to him. *See* 1 Wigmore, *supra*, § 117; 2 *id.* §§ 385, 389, 395. In addition, the jury should have been instructed that in no event could it use the evidence as indicative that he was generally a culpable person, though the principle point is that the jury should have at least been instructed, as in *McClain*, as to the limited purpose for which the evidence was admitted.

Since the jury was left at large with the evidence of the shotgun incident, enabling it to consider that appellant was a criminal type, rather than being limited in its use as set forth above, the trial became infected with serious error. Absent proper instruction there is the danger, recognized by the court itself, that the jury would infer a general disposition on appellant's part to commit crime. Moreover, only with an appropriate limiting instruction can courts hope to confine consideration by a jury of such prejudicial evidence within the limits the law allows.

The recent decision in *McClain* is explicit that a limiting instruction is necessary whenever evidence of other criminal conduct of an accused is introduced at trial: [3]

> Whenever prosecution evidence is introduced which is admissible only for a limited purpose, the defendant is entitled to instructions which inform the jury of the proper use which may be made of that evidence.

United States v. McClain, *supra*, 142 U.S.App.D.C. at 217, 440 F.2d at 245. *See* United States v. Bussey, 139 U.S.App.D.C. 268, 272–273, 432 F.2d 1330, 1334–1335 (1970); [4] United States v. Gay, *supra*, 133 U.S.App.D.C. at 340–341, 410 F.2d at 1039–1040; [5] 1 Wigmore, *supra*, § 13. The court now rules quite contrarily to these decisions. Its attempt to distinguish the *McClain* decision on its facts entirely overlooks the basis of that decision; for the court in *McClain* expressly disclaimed reliance upon the facts mentioned by the majority. *McClain* is clearly to the effect that an appropriate limiting instruction should be given in all cases where the evidence has a limited purpose; and it is clear that the evidence of the shotgun incident was admissible for a limited purpose, notwithstanding it was admissible, as the majority recognize, to show appellant committed the act charged to him. [6]

---

3. Moreover, the limiting instruction must be given at the moment the prejudicial evidence is admitted. United States v. McClain, *supra*; United States v. Bussey, 139 U.S.App.D.C. 268, 272–273, 432 F.2d 1330, 1334–1335 (1970).

4. The court in *Bussey* said:
   Moreover, no instruction was given at the time this testimony was admitted, to caution the jurors on the limited purpose for which it was being received, and it blinks reality to think that * * * the jury was capable of the "mental gymnastic" [18] of dis-

regarding this evidence in "any respect" except as to the one purpose permitted by the trial court. [Footnote omitted]

5. The court in *Gay* said:
   Having found the evidence admissible, the trial court was, of course, under a duty to instruct the jury on the limited purpose for which the evidence was to be considered.

6. The evidence of the prior shotgun incident was admissible only to show motive. Though this affords the jury a broader use of the evidence than when the question of intent is involved, as in

The reversible character of the error is not obviated by the absence of a request by counsel for the instruction. Nothing appears to indicate that counsel for tactical or other reasons waived the instruction to which appellant himself was entitled. In this situation the *McClain* case again is explicit as to the reversible character of the error. The court in the present case, however, overlooks the language of *McClain* in declining to find plain error, indeed does not even make reference to *McClain* in that connection. Moreover, in view of the paucity of the Government's evidence, as well as the very close question on the evidence whether the homicide was second degree murder or manslaughter, the error was not harmless. I have great difficulty in finding any rational basis in the evidence for the jury to have convicted of second degree murder instead of manslaughter, assuming a guilty verdict, except for an impermissible use by the jury of the old incident. There is strong indication that the shooting occurred in a sudden fracas and that appellant deeply regretted its fatal result.[7]

Since in my view reversal of appellant's conviction is required, I am unable to dispose of the conviction of carrying a dangerous weapon without a license on the basis of United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970). The Government's evidence on this part of the case in no way showed that appellant brought the pistol with him on the night in question.[8] Appellant, when asked if he had brought the gun with him, replied in the negative, and said: "[W]hen I was living there, when I moved, she had taken the gun. I never have seen it since. She would never give it to me. * * * I asked for it. I looked around the house and I couldn't find it." The evidence at trial thus demonstrated that appellant never removed the gun which he owned from the deceased's home when he terminated his residence there. I accordingly would hold that the statutory exception contained in D.C. Code § 22–3204 for the crime therein defined—"except in his dwelling house"—applies to the facts of appellant's case to require reversal of his conviction for carrying a dangerous weapon without a license. *Compare* Bell v. United States, 49 App.D.C. 367, 265 F. 1007 (1920).

I respectfully dissent.

---

*McClain,* the evidence still was admissible only for a limited purpose. To have allowed it to be used by the jury at large was quite contrary to *McClain.* It deprived appellant of his right to ensure that the jury consider it only for its permissible value. *See* the dissenting opinion of Chief Justice Warren, with whom Mr. Justice Douglas, Mr. Justice Brennan, and Mr. Justice Fortas joined, in Spencer v. Texas, 385 U.S. 554, 572–575, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), which is not inconsistent with the Court's opinion.

7. If the court were to reduce appellant's conviction to manslaughter in the interest of justice to avoid a new trial because of the error which occurred, I would be disposed to agree. *Compare* Austin v. United States, 127 U.S.App.D.C. 180, 382 F.2d 129 (1967); Hemphill v. United States, 131 U.S.App.D.C. 46, 402 F.2d 187 (1968); 28 U.S.C. § 2106.

8. The testimony of Sergeant O'Brien offered in rebuttal was, of course, only for the purpose of impeachment and cannot serve as substantive evidence of the crime charged. *See* p. 696 n. 7 *supra,* of the court's opinion.