Kenneth ROBINSON, Appellant,

v.

UNITED STATES, Appellee.

No. 6527.

District of Columbia Court of Appeals.

Argued April 25, 1973.

Decided March 27, 1974.

Rehearing Denied April 8, 1974.

Eugene M. Bond, Arlington, Va., appointed by this court, for appellant.

Douglass J. McCollum, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., and John A. Terry and Lawrence P. Lataif, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

HARRIS, Associate Judge:

Appellant was found guilty by a jury of two counts of assault with a dangerous weapon (D.C.Code 1973, § 22–502) and one count of cruelty to a child (D.C.

Code 1973, § 22–901).[1] Consecutive sentences of imprisonment were imposed. Appellant challenges: (1) the failure of the United States Attorney to refer the matter to the Director of Social Services as an intrafamily offense; (2) the admission of certain evidence relating to a prior assault by appellant on the same child; and (3) the imposition of consecutive sentences for acts which allegedly were components of a single assault.[2] We affirm.

## I

The victim was three-year-old Thomas Russell. He and his mother, Shirley Russell, were living with appellant. On January 10, 1972, Thomas asked to go to the bathroom, but appellant refused to permit him to go. When a soiling of Thomas' clothing followed, appellant undressed him and carried him to the bathroom. He placed Thomas under the shower and turned the water on full. Shirley heard the boy gasping for air, and came to his aid. She said: "What are you trying to do, kill the baby?" Appellant pushed her from the room and closed the door. Thomas again was thrust under the shower; his mother could hear his continued efforts to breathe and his struggle to free himself. After removing Thomas from the shower and drying him, appellant repeatedly slapped and kicked him. He also beat him with a belt.

On the following night, appellant took Thomas and his mother to a movie. After their return home, appellant directed Thomas to take off his shirt and go to bed. The shirt was small, and the boy had trouble removing it. Appellant picked up a pair of pliers from the top of a television set and hurled them at Thomas. One handle of the pliers was imbedded in Thomas' skull, causing a depressed fracture and necessitating brain surgery.

## II

Among the provisions of the District of Columbia Court Reform and Criminal Procedure Act of 1970 were those establishing procedures for the handling of intrafamily offenses. D.C.Code 1973, § 16–1001 to 16–1006. Section 16–1001 defines such an offense as follows:

(1) The term "intrafamily offense" means an act, punishable as a criminal offense, committed—

(A) by one spouse against the other;

(B) by a parent, guardian, or other legal custodian against a child; or

(C) by one person against another person with whom he shares a mutual residence and is in a close relationship rendering the application of this chapter appropriate.

Insofar as the United States Attorney is concerned, the principal purpose of the relevant provisions of the Code is to provide for the possible diversion from the criminal justice process of offenses committed within what might be described as a family-type unit.[3] Section 16–1002(a) provides that where criminal conduct has occurred and ". . . it appears to the United States Attorney . . . that the conduct involves an intrafamily offense, he shall notify the Director of Social Services [of

1. A motion for a judgment of acquittal was granted as to a related charge of maliciously disfiguring another (D.C.Code 1973, § 22–506), and the trial court sua sponte dismissed a fifth count charging the prohibited possession of a dangerous weapon [D.C.Code 1973, § 22–3214(b)].

2. Appellant also challenges the sufficiency of the evidence to sustain the finding of guilt on the charge of assault with a dangerous weapon, namely, a belt. While the develop-

ment of direct testimony on the beating of the child with the belt was less than a model of precision, we conclude that the evidence as a whole was adequate to sustain the verdict.

3. The Corporation Counsel has independent authority to seek a civil protection order in the Family Division of Superior Court when an intrafamily offense has been either committed or threatened. D.C.Code 1973, § 16–1003(a).

the Superior Court]." In this case, no such notification was given.

Thomas' mother, Shirley Russell, had been living with appellant for approximately three years at the time of the conduct involved, and the younger of her other two children had been fathered by appellant. Further, the affidavit in support of the warrant for appellant's arrest referred to him as Miss Russell's common-law husband. (She testified at trial, however, that she did not consider herself married to him.)

■ The government contends that the relationship between the parties was not close enough to bring the case within the ambit of § 16–1001(1)(C), and hence that it had no obligation to notify the Director of Social Services. In light of the obvious facts, such an argument cannot be accepted. If the acts of appellant did not appear to the United States Attorney's office to have constituted intrafamily offenses, they should have. In our view, the government was obliged by § 16–1001(1)(C) to notify the Director of the offenses.[4] See White v. United States, D.C.App., 297 A.2d 766, 768–769 (1972). Whatever the reason for the failure, the failure was wrong.

■ We next consider what sanction, if any, we should impose for the prosecutorial failure. The Circuit Court has expressed the view that the dismissal of a criminal case may be an appropriate re-

sponse to a lack of notification. United States v. Harrison, 149 U.S.App.D.C. 123, 461 F.2d 1209 (1972).[5] While the facts of a given case might make dismissal a permissible exercise of the trial court's discretion, the statute provides no sanction for non-notification. It also is significant that the Director of Social Services is not required to do anything after being notified of an intrafamily offense. Section 16–1002 (a) provides simply that: "The Director of Social Services *may* investigate the matter and make such recommendations to the United States attorney as the Director deems appropriate." (Emphasis added.) Further, the Code does not oblige the United States Attorney to await any possible recommentation by the Director. It provides that after giving notification, the "United States attorney *may also* (1) file a criminal charge based upon the conduct . . . or (2) refer the matter to the Corporation Counsel for the filing of a petition for civil protection in the Family Division."[6] D.C.Code 1973, § 16–1002(b) (emphasis added). Thus, unquestionably the ultimate control over the handling of an intrafamily offense is vested in the United States Attorney. Hence, only in an extreme case might dismissal be an appropriate judicial response to a failure to notify the Director.

Here, however, we are not asked to review the denial of a motion for dismissal based upon the failure to notify; the point was not raised below. We are asked to

---

4. The legislative history of the Act sheds little light on the requirement of notification, although there are indications—as is logical —that it was intended that those offenses which might be diverted from normal prosecution would be minor ones. (It is inconceivable, for example, that an intrafamily first degree murder case would be dealt with civilly rather than criminally.) However, the statute does not establish different treatment for different categories of offenses. Additionally, § 16–1002(b) provides that the United States Attorney may consult with the Director concerning conditions of release in any case in which a criminal prosecution is initiated. Hence, unless and until Congress speaks to the contrary, we can only conclude that notification must be given to the Director in all intra-

family cases, although we recognize that such notification occasionally may be a rather perfunctory act.

5. The relevant language in the *Harrison* opinion is dictum, and is not binding on our interpretation of the District of Columbia Code since it was decided subsequent to court reorganization. D.C.Code 1973, § 11–102; M. A. P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

6. The United States Attorney may not refer a case to the Corporation Counsel for civil disposition without first consulting with the Director "concerning the appropriateness of the referral." D.C.Code 1973, § 16–1002(b).

conclude that the trial court's failure to dismiss the case sua sponte was plain error. We have no disposition to do so. Of all participants at the trial level, defense counsel is peculiarly in a position to recognize when an alleged offense may fall within the intrafamily category, and any questions relating thereto should be raised in advance of trial. It would be inappropriate for us to permit defense counsel to remain silent as to possible intrafamily treatment of a criminal case and then readily achieve a dismissal on appeal.[7]

## III

In the government's opening statement, counsel told the jury: ". . . on one prior occasion in 1970, Mr. Robinson was convicted of assaulting the same Thomas Allen Russell who was at that time two years old. The Government will introduce this evidence to you at the trial and you should be aware of it now solely for the purpose of showing the intent and the motive which Kenneth Robinson had on January 10 and 11, of 1972."

In the opening statement on behalf of appellant, defense counsel contended that the ". . . facts will show there was a pair of pliers, and Mr. Robinson didn't have them for any intent of malice against this young child. There was a television set that these people had that had no knob on it and it was necessary to use the pliers . . . to see some sort of a picture. * * * Mr. Robinson had these pliers and attempted to adjust it and little Thomas was looking somewhere close by, and Mr. Robinson got a shock and cast the pliers over his shoulder and it unfortunately did hit and scar the head of little Tommy and did damage his skull, but it was not the intent of Mr. Robinson to damage this child."

The principal government witness was Thomas' mother. During her direct testimony, Miss Russell stated that appellant had beaten Thomas with a belt and a stick 17 months prior to the events involved here, and that the police then had been called. At a bench conference, the government stated its desire to introduce evidence that appellant had pleaded guilty to an assault charge arising from that earlier incident. Discussion was had as to whether it would be necessary for the defendant to testify prior to the introduction of any evidence of the prior conviction. The court concluded that the prior conviction could be brought to the jury's attention as part of the government's direct case "merely to demonstrate motive and intent".[8] The government then suggested an "immediate precautionary instruction to the jury". However, the government intended to have the court give what is now Standard Instruction No. 1.08 (formerly No. 24), which relates to the admission of a prior conviction for purposes of impeachment. Criminal Jury Instructions for the District of Columbia, No. 1.08 (2d ed. 1972); *see* D.C.Code 1973, § 14–305. The trial court correctly recognized that evidence of the prior conviction would be admissible in the government's case-in-chief, if at all, to show intent rather than for purposes of impeachment. The court accordingly stated that it would give the relevant portions of what was then Standard Instruction No. 38 (now, after amendment, No. 2.49).

The last government witness began to testify with respect to a certified copy of

7. We anticipate that the failure of the United States Attorney's office which occurred here will not be repeated. Irrespective of that belief, trial judges should remain alert to the possibility that a case may involve an intrafamily offense, and inquire whether notification has been given to the Director. If it has not, a continuance is a potential course of action. [If consideration were to be given to a dismissal after jeopardy has attached in order to permit the Director to be notified, the consent of the defendant would be required to avoid a double jeopardy problem. *See* Downum v. United States, 372 US. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).]

8. In a given factual situation, "motive" and "intent" might overlap and both be relevant. Here, however, motive is not an issue; we deal (as the trial court did later in its instructions) solely with intent.

the record in the earlier case in which "Kenny Robinson" pleaded guilty to a charge of assaulting Thomas Russell in August of 1970. After considerable argument by counsel as to the admissibility of such evidence, interspersed with bits of testimony, the trial court itself read to the jury the fact that Robinson had pleaded guilty to assaulting Thomas on that prior occasion. There was no objection to the court's intercession, nor was it argued that the defendant in the prior case was not our appellant. The copy of the record was received in evidence, and the government rested. The court and both counsel then addressed their attention to motions for judgments of acquittal, with nothing being said about a limiting instruction.

Following the court's rulings on the motions, the defense advised the court that it would not present any evidence. Thus, the defense of accident which was advanced in defendant's opening statement never became the subject of supportive testimony. In its final instructions, the court told the jury that the evidence of the prior guilty plea " . . . was admitted solely for your consideration of whether it tends to show that the defendant intended to commit the offense[s] with which he is presently charged. * * * You may not consider it to show in any other respect defendant's guilt [of] offenses he is presently charged with."

■■ Appellant challenges the evidence of the prior conviction on two principal grounds: (1) that the government had no right to introduce it as part of its direct case, and (2) that the trial judge commit-

ted plain error by not giving an immediate cautionary instruction.[9]

■ Subject to well-recognized exceptions, evidence of a defendant's prior criminal record is not admissible. Such evidence risks unduly prejudicing a defendant by leading a jury to believe he had an inherent predisposition to commit the offense with which he is charged. One of the exceptions, however, is that evidence of a prior crime may be admitted to show intent—or, phrased somewhat differently in a way which is relevant here, to show that an act admittedly committed was not done accidentally or unintentionally. United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (1971); Drew v. United States, 118 U.S.App.D.C. 11, 331 F.2d 85 (1964); C. McCormick, Handbook of the Law of Evidence 326–33 (1954).

■ Intent is an essential element of the offenses with which appellant was charged, and hence had to be proved by the government beyond a reasonable doubt. See, e. g., United States v. Thomas, 148 U.S.App.D.C. 148, 152–153, 459 F.2d 1172, 1176–1177 (1972). The evidence as to appellant's prior assault on young Thomas unquestionably was relevant as to whether he had the requisite intent to support guilty verdicts.[10] The trial court had broad discretion in weighing the probative value of the evidence against the unquestioned prejudice to appellant which was occasioned by its admission. United States v. Jones, 476 F.2d 533 (D.C.Cir.1973); United States v. Fench, 152 U.S.App.D.C. 325, 470 F.2d 1234 (1972), cert. denied sub nom. Blackwell v. United States, 410 U.S. 909, 93 S.

---

9. Appellant makes two further contentions which do not warrant extended discussion: (1) that it was plain error for the trial judge to have read the evidence of the prior guilty plea to the jury, and (2) that the prior assault, having occurred some 17 months earlier, was too remote to warrant receipt in evidence. The trial court did not abuse its discretion with respect to either of those questions. See, e. g., United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685

(1971); People v. Kerns, 134 Cal.App.2d 110, 285 P.2d 81 (1955).

10. It may be argued that if a defendant denies committing the act in question, then intent is not a proper issue. However, if there is uncertainty as to the precise nature of the defense, " . . . the prosecution may in fairness assume that Intent may come into issue." II Wigmore on Evidence 207 (3d ed. 1940).

Ct. 964, 35 L.Ed.2d 271 (1973). *See also* United States v. Woods, 484 F.2d 127 (4th Cir. 1973).

■ Appellant does not contend that the evidence was inadmissible per se, but argues that the court should have refused to admit it until rebuttal by the government.[11] Compare United States v. Byrd, 352 F.2d 570, 575 (2d Cir. 1965), *with* United States v. Fench, *supra,* 152 U.S. App.D.C. at 331, 470 F.2d at 1240. However, the discretionary judgment to be exercised by the trial court with respect to such evidence—weighing its probative value against prejudice to the defendant—is the same whether it is offered as part of the government's case-in-chief or as rebuttal. *See* United States v. Gaus, 471 F.2d 495, 499 (7th Cir.), cert. denied, 412 U.S. 938, 93 S.Ct. 2772, 37 L.Ed.2d 397 (1973). Intent was placed squarely in issue by the contention in defendant's opening statement that the pliers episode was accidental, and we find no abuse of discretion in the trial court's acceptance of the evidence during the government's direct case.

■ Nor do we find error in the fact that a cautionary instruction was given only in the final jury instructions. Experienced defense counsel chose not to request an immediate instruction when the jury was told of the prior conviction, and did not object to the absence thereof, notwithstanding the fact that the government earlier had suggested such an instruction as a protective measure. We are satisfied that the instruction as given adequately protected appellant's rights. United States v. Fench, *supra*; United States v. Bobbitt, *supra*.

## IV

Appellant received consecutive sentences for each of the three offenses of which he was found guilty. It is argued that the "imposition of consecutive sentences for a single episode against a child was improper". We are unable to view the case in such a light.

■ We consider first the two assaults with a dangerous weapon charges. One, ADW-belt, occurred as a part of the shower incident on January 10, 1972. The second, ADW-pliers took place the following night. There can be no question but that they constituted separate offenses, and that the imposition of consecutive sentences for them was within the area of the trial court's permissible discretion. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see* D.C.Code 1973, § 23–112.

■ A closer question is presented by the January 10 ADW-belt and cruelty charges, but we reach the same conclusion with respect to them.[12] The trial court concluded, and we agree, that appellant's actions (1) in holding Thomas under the shower in such a manner as to cause the boy to fight for air (and for Miss Russell to fear for his life), and (2) in repeatedly slapping and kicking Thomas after removing him from the shower would support a verdict of guilty on the charge of cruelty to a child, irrespective of the fact that the boy also was beaten with a belt.[13]

In its final instructions to the jury, the trial court was careful to avoid any blending together of the ADW-belt and the cruelty charges. The belt charge was kept wholly separate, and the instructions on

11. Since appellant elected not to present any testimony in his defense, exclusion of the evidence of the prior conviction from the government's direct case would have resulted in its total exclusion.

12. *See* Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957);

Ingram v. United States, 122 U.S.App.D.C. 334, 353 F.2d 872 (1965).

13. A doctor from Children's Hospital testified to bruises on the boy's body as well as to the trauma resulting from the pliers episode.

the cruelty charge properly stressed the different elements which had to be found to support a guilty verdict for that offense.[14] The jury's verdict on the cruelty charge was supported by the evidence, and the imposition of a separate, consecutive sentence for that offense also constituted a permissible exercise of the trial court's discretion.

Affirmed.

14. The court stated in part:

The essential element[s] of the offenses of cruelty to children, each of which the Government must prove beyond a reasonable doubt are: That the defendant did cruelly beat and abuse; that the defendant did torture, cruelly beat, abuse or otherwise wilfully maltreat Thomas Allen Russell. * * *

In other words, in order for you to find that the defendant is guilty of the offense of cruelty to children, it is not enough that you find the defendant merely exercised bad judgment. Rather, it is necessary that you find that the defendant was motivated by evil intent in committing the acts which constitute the offense.