David **McLEOD**, Appellant,

v.

**UNITED STATES,** Appellee.

Nos. 85–1188, 86–329 and 86–366.

District of Columbia Court of Appeals.

Argued Dec. 8, 1989.
Decided Jan. 26, 1990.

* Associate Judge Terry has recused himself from this case.

Stuart Fisk Johnson, for appellant.

Rachel Adelman–Pierson, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, FERREN and TERRY, Associate Judges.

NEWMAN, Associate Judge:

This appeal arises from a conviction of McLeod of (1) four counts of taking indecent liberties with a minor child, D.C.Code § 22–3501, and (2) one count of carnal knowledge, D.C.Code § 22–2801. He raises several issues in this appeal, only two of which merit more than conclusory discussion. McLeod argues that his conviction should be overturned because (1) the United States Attorney failed to refer the matter to the Director of Social Services as an intrafamily offense, pursuant to D.C.Code § 16–1002; and (2) the prosecutor's questions during cross-examination required one witness to comment on the veracity of previous witnesses.[1]

---

1. McLeod also argues that his case should be reversed because: of other instances of prosecutorial misconduct, the trial court committed error in qualifying one of the witnesses as an expert, and certain hearsay testimony was erroneously allowed into evidence. We have examined these arguments and find they have no merit.

McLeod also appeals on the grounds that the trial court admitted evidence of uncharged sexual misconduct involving McLeod and a third child. It is well established that evidence of other crimes is inadmissible to prove bad char-

## I.

According to the government's evidence, McLeod repeatedly sexually assaulted his stepdaughter, Pamela, who was 12 years old at the time of the charged assaults, and her cousin, Tammy, who was 11 and 12 when he allegedly assaulted her. The alleged crimes took place during the course of two years, from June 1982 through the summer of 1984, in McLeod's home. At the time of the charged crimes, he lived in the same house with his wife, his three natural daughters (all young children), and his stepdaughter, Pamela. Tammy often visited the McLeod home and sometimes slept over.

McLeod repeatedly molested or had sexual intercourse with complainants. He is charged, however, only with specific incidents that Pamela and Tammy were able to date through association with specific events in their lives. The charged incidents were as follows:

(1) McLeod forced Pamela to have intercourse with him one morning sometime during her spring break in 1984 (April 20 to 27, 1984);

(2) On April 7, 1984, the day of the Cherry Blossom Parade, McLeod attempted to persuade Pamela to have sexual intercourse with him; she refused and he then molested her;

(3) McLeod molested Tammy on the day of her grandmother's funeral (June 4, 1982);

(4) McLeod molested Tammy again that night (June 4, 1982); and

(5) McLeod molested Tammy during the summer of 1983.

## II.

McLeod argues that the prosecutor violated D.C.Code § 16–1002, which provides as follows:

(a) If upon the complaint of any person of criminal conduct by another or the arrest of a person charged with criminal conduct, it appears to the United States Attorney for the District of Columbia (hereinafter referred to as the "United States attorney") that the conduct involves an intrafamily offense, *he shall notify the Director of Social Services.* The Director of Social Services may investigate the matter and make such recommendations to the United States attorney as the Director deems appropriate.

(b) The United States attorney may also (1) file a criminal charge based upon the conduct and may consult with the Director of Social Services concerning appropriate recommendations for conditions of release taking into account the intrafamily nature of the offense; or (2) refer the matter to the Corporation Counsel for the filing of a petition for civil protection in the Family Division. Prior to any such referral, the United States attorney shall consult with the Director of Social Services concerning the appropriateness of the referral.

(c) The institution of criminal charges by the United States attorney shall be in addition to, and shall not affect the rights of the complainant to seek any other relief under this chapter. Testimony of the respondent in civil proceedings under this chapter and the fruits of that testimony shall be inadmissible as evidence in a criminal trial except in a prosecution for perjury or false statement.

D.C.Code § 16–1002 (1989 Repl.) (emphasis added). McLeod argues that the language "[the prosecutor] shall notify the Director of Social Services" is mandatory and that the trial court's refusal to dismiss the indictment because of the prosecutor's failure to notify constitutes reversible error.

We agree that the language is mandatory, but do not agree that the trial court's refusal to dismiss constitutes reversible er-

acter or propensity to commit a particular crime. *Thompson v. United States,* 546 A.2d 414, 418 (D.C.1988). However, under certain exceptions, for example, proof of motive or intent, such evidence may be admitted. *See Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). In the past, this court has recognized particular exceptions to the *Drew* rule in sex offense cases, *see, e.g., Pounds v. United States,* 529 A.2d 791 (D.C.1987); *Dyson v. United States,* 97 A.2d 135 (D.C.1953), and we find that the challenged evidence was not improperly admitted in this case.

ror. In *Robinson v. United States*, 317 A.2d 508 (D.C.1974), this court stated that the government is obliged to notify the Director of Social Services and explained the notification provision as follows:

> The legislative history of the Act sheds little light on the requirements of notification, although there are indications—as is logical—that it was intended that those offenses which might be diverted from normal prosecution would be minor ones. (It is inconceivable, for example, that an intrafamily first degree murder case would be dealt with civilly rather than criminally.) However, the statute does not establish different treatment for different categories of offenses. Additionally, § 16–1002(b) provides that the United States Attorney may consult with the Director concerning conditions of release in any case in which a criminal prosecution is initiated. Hence, unless and until Congress speaks to the contrary, we can only conclude that notification must be given to the Director in all intrafamily cases, although we recognize such notification may be a rather perfunctory act.

*Id.* at 511 n. 4.

 Although notification of an intrafamily offense is statutorily mandated, the sanction a court must impose for non-notification is not. Sanction is at the discretion of the trial court. A court may dismiss a case for non-notification, but in *Robinson* we stated that "only in an extreme case might dismissal be an appropriate judicial response to a failure to notify the Director." *Id.* at 511.

We note that the proper procedure when a defendant files a timely motion, *see* Super.Ct.Crim.R. 47–I(c), seeking dismissal for non-notification, *see* Super.Ct.Crim.R. 12(b), is for the trial court to hold the defendant's motion to dismiss in abeyance and direct the United States Attorney to notify the Director of Social Services, with a further direction by the court to the Director of Social Services to make a prompt response to the notification. Here, however, McLeod's request for notification came only four days before trial and, given the virtual certainty that the United States Attorney would pursue criminal prosecution regardless of the Director's response, we find no abuse of discretion in the trial court's decision to deny the motion to dismiss and to proceed to trial. *See generally Johnson v. United States*, 398 A.2d 354 (D.C.1979).

### III.

 McLeod also asserts that the prosecutor engaged in misconduct in asking McLeod, on cross-examination, whether the testimony of several prior witnesses "was accurate." We agree. It is improper for the prosecutor to ask one witness to comment on the credibility of prior witnesses. *See Poteat v. United States*, 559 A.2d 334, 336 (D.C.1989); *Green v. United States*, 481 A.2d 1310, 1311 (D.C.1984); *Carter v. United States*, 475 A.2d 1118, 1126 (D.C.1984), *cert. denied*, 469 U.S. 1226, 105 S.Ct. 1222, 84 L.Ed.2d 362 (1985). Asking the witness on the stand whether another witnesses's testimony is "accurate" is equivalent to asking the witness whether the other witness was lying or mistaken. Therefore, this line of questioning is impermissible. We urge that litigants in this jurisdiction desist from attempting to find "nice" distinctions between phrasings which we have already explicitly condemned and those we have not yet explicitly condemned. What is prohibited is seeking to have one witness comment or opine on the credibility of a prior witness, however phrased. In the circumstances of this case, we find the error harmless. The government's case was a strong one; the improper questions were on somewhat peripheral issues; and, finally, the court instructed the jury that they were the sole judges of witness credibility. *See (Phillip) Dyson v. United States*, 418 A.2d 127, 132 (D.C.1980).

*Affirmed.*