UNITED STATES of America

v.

Albert P. CHILDS, Appellant.

No. 77–1218.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 7, 1977.
Decided Jan. 10, 1979.

Charles M. Brower, Washington, D. C., with whom Paul L. Friedman and Alan L. Morrison, Washington, D. C., were on the brief for appellant.

William J. Cassidy, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and James M. Hanny, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before BAZELON, LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal challenges a conviction for obstruction of mailed matter,[1] one of two crimes for which appellant was tried. Reversal is sought principally on two grounds. He contends that the Government's proof did not conform to the allegations of the indictment charging that offense. He also asserts that he was deprived of a fair trial by the admission of evidence of other criminal activity, or at least by the District Court's failure to instruct the jury on the limited use to which that evidence might properly have been put. We affirm.

I

An employee of County Decorators, Inc., drew a check payable to George F. Warner & Company, a concern located at 101 Q Street, *Northeast*, in the District of Columbia. The check was placed in an envelope erroneously addressed, however, to 101 Q Street, *Northwest*, and mailed. Apparently it was delivered by the postal service to an apartment at the Northwest address wherein appellant and several others reside.[2]

Just who may have brought the misaddressed item into the apartment from its mailbox is unclear. But about a month after the mailing, so Officer Patrick J. Lilly of the Metropolitan Police Department was to testify, appellant came to the second-story loft of a warehouse wherein law enforcement officers were posing—in an operation that became known as "Sting"—as organized criminals interested in purchasing stolen property and other contraband. There, said the officer, appellant tendered for sale several credit cards and two checks, one of which was that issued by County Decorators. Officer Lilly avowed that he purchased the lot from appellant for $100, and made him a loan of $25 more.[3]

On cross-examination, defense counsel[4] asked the officer whether he had expected appellant to repay the loan, to which the reply was that appellant "said he would be back."[5] On redirect examination, the prosecutor inquired as to whether appellant ever returned to the loft and, after an answer in the affirmative, whether he did so to repay the loan. Officer Lilly responded "[t]hat, and to sell me some other items."[6]

---

1. 18 U.S.C. § 1702 (1976), quoted *infra* note 9.

2. Trial Transcript (Tr.) 12 17, 19. Appellant's mother, his sole witness, testified that at the time the check was delivered, she lived in the apartment, with her four sons and the female companions of two. Tr. 64.

3. Tr. 33.

4. Not his counsel on appeal.

5. Tr. 39.

6. Tr. 42.

In addition to this testimony, the District Court allowed the introduction, over defense objection, of a videotape of the transaction in which the County Decorators check was bought.[7] The videotape had recorded appellant's entry into the loft and his production of the credit cards and checks for Officer Lilly's inspection. Two checks appeared on the videotape but their markings were not clearly discernible, and nothing in the accompanying conversation identified either as the County Decorators check. No exchange of money was shown because, it was explained, the recorder ran out of tape before that event occurred.

At the close of the evidence, the District Court granted appellant's motion for a judgment of acquittal on a count of the indictment charging appellant with unlawful possession of stolen mail.[8] The ground of this ruling was that the evidence failed to establish that he was the one who actually took the misaddressed envelope and the enclosed check from the apartment mailbox into which it seemingly had been delivered. The court, however, denied appellant's motion seeking the same disposition of the remaining count, which set forth the obstruction charge.[9] As we have noted, the jury convicted on this count.

## II

Reminding us that the count on which he was found guilty alleged that he took the envelope and the enclosed County Decorators check "with the design to obstruct the correspondence of the letter," [10] and deeming this charge the statutory analogue of common law larceny, appellant contends that the Government's proof at best disclosed nothing more than embezzlement. The thrust of the argument is that, absent evidence as to who removed the check-bearing envelope from the apartment's mailbox, the Government could not establish that appellant was responsible for the initial trespassory taking from the mail. This, says appellant, left the Government with evidence only of a crime not charged, and resultantly his conviction must be overturned.[11]

This theory ignores the plain language of the indictment, which asserts that appellant "did take" a letter which *had been* in an authorized depository for mail matter . . ." before delivery to the addressee.[12] The averment thus was, not that appellant had removed the letter from the mailbox, but that he appropriated the letter, which at some prior time had been in an authorized depository, "before the same had been de-

7. Whenever someone entered the loft to peddle contraband, the transaction was videotaped. Tr. 28–31, 37–39.

8. See 18 U.S.C. § 1708 (1976), in relevant part reading:
    Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; . . . .

9. This count was laid on 18 U.S.C. § 1702 (1976), providing:
    Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or

in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both.

10. The indictment read:
    On or about November 21, 1975, within the District of Columbia, ALBERT P. CHILDS did take a letter addressed to George F. Warner and Co., 101 Q Street, Northwest, Washington, D.C. which had been in an authorized depository for mail matter, before the same had been delivered to the person to whom it was directed, with the design to obstruct the correspondence of the letter.
    Tr. 86.

11. See *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 256–257 (1960).

12. See note 10 *supra* (emphasis supplied).

livered to the person to whom it was directed."[13]

We thus are unable to discern any variance between the charge specified in the indictment and the Government's proof at trial. The evidence demonstrated beyond peradventure that the County Decorators check had been introduced into the mail in the misaddressed envelope and that the addressee had never received it.[14] The videotape of appellant's visit to the warehouse loft had captured his declarations to Officer Lilly that the check had been delivered to his residence and that he had come by it there. From this showing, the jury might reasonably have deduced that appellant committed the taking described in the indictment.

It goes without saying that the indictment must charge misconduct within the ambit of a criminal law. But the indictment here closely tracked the text of the statute upon which the prosecution was based, which forbids the taking, with intent to obstruct the correspondence, of any letter which "has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed."[15] This language connotes plainly enough that the required taking may occur at any time before the letter reaches the addressee, regardless of whether it was in the physical custody of the postal service or was on deposit in an authorized mailbox when taken, and so the courts have consistently held.[16] Decisions under this statute teach, too, that even when mailed matter has been removed from an authorized mail depository by another, one obstructs if with the intent interdicted he appropriates it thereafter and before it arrives in the hands of the addressee.[17]

Mailed matter is thus protected against obstruction from the time it enters the postal system until it is manually delivered to the addressee.[18] Anyone who intentionally

13. See note 10 *supra*.

14. Tr. 15, 18 19.

15. See note 9 *supra*.

16. *United States v. Wade*, 364 F.2d 931, 934 (6th Cir. 1966); *United States v. Bradford*, 493 F.2d 1282, 1284 (7th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *United States v. Maxwell*, 137 F.Supp. 298 (W.D.Mo. 1955), *aff'd*, 235 F.2d 930, 932 (8th Cir.), *cert. denied*, 352 U.S. 943, 77 S.Ct. 266, 11 L.Ed.2d 239 (1956); *McCowan v. United States*, 376 F.2d 122, 124 (9th Cir.), *cert. denied*, 389 U.S. 839, 88 S.Ct. 66, 19 L.Ed.2d 102 (1967); *United States v. Ashford*, 403 F.Supp. 461, 464 466 (N.D.Iowa 1975), *aff'd*, 530 F.2d 792 (8th Cir. 1976). See also *United States v. McCready*, 11 F. 225, 237 (C.C.W.D.Tenn.1882). In this respect, the reach of the anti-obstruction statute, 18 U.S.C. § 1702, quoted *supra* note 9, is thus greater than that of the theft-from-the-mail provision, 18 U.S.C. § 1708 (1976), quoted *supra* note 8. Compare *United States v. Davis*, 461 F.2d 83, 88·90 (5th Cir.), *cert. denied*, 409 U.S. 921, 93 S.Ct. 250, 34 L.Ed.2d 180 (1972); *United States v. Anton*, 547 F.2d 493, 495 496 (9th Cir. 1976); *United States v. Ashford*, *supra*, 403 F.Supp. at 464 465.

17. *E. g.*, *United States v. Maxwell*, *supra* note 16, where the accused took a letter from a table in a hallway after it had been innocently removed from a mailbox by another. In the view of the District Court,

[t]hat she took [the letter] from a table in the hallway on which the "letter" had been placed, after innocently being taken from an authorized depository for mail matter, does not militate against or exculpate her from the offense denounced in Section 1702, supra. The "letter" had not "been delivered to the person to whom it was directed". Patently, the protection afforded by said section for such "letter" was then existent, as intended by Congress. The Congress has the right to protect a "letter" with whatever is absolutely necessary to assure its delivery "to the person to whom it was directed."

137 F.Supp. at 304. On appeal, the Eighth Circuit added:

We can think of no sound reason for not giving to the statute the full meaning which its language imports or for denying to Congress the power to protect a letter from theft from the time it is mailed until it has actually been received by the person to whom it is addressed. Certainly the stealing of undelivered United States mail is a matter of national concern.

235 F.2d at 932. Accord, *United States v. Murray*, 306 F.Supp. 833, 834–835 (D.Md.1964).

18. With this broad construction of "taking," the ensuing prohibition of "embezzlement" in § 1702 can be harmonized as contemplating an appropriation by one who has come into possession of mailed matter by virtue of a position of trust. See *United States v. Brown*, 551 F.2d 236, 240 241 (8th Cir. 1977) (security guard at

obstructs its journey through the postal process invites the statutory sanctions.[19] The evidence at trial, if believed, established that appellant disrupted this process by taking the County Decorators check from his apartment and selling it to Officer Lilly. We conclude, then, that the indictment sufficiently averred an offense defined by the underlying law, and that the Government's proof was in substantial conformity with the charge [20] and sustained appellant's conviction when accepted by the jury.

### III

Appellant next asserts that the District Court committed reversible error in admitting into evidence the portion of the videotape portraying his sale of the several credit cards and the additional check to Officer Lilly. At trial, the defense sought to expurgate that much of the transaction from the videotape, claiming that evidence of other crimes was irrelevant to the issues and, even if marginally material, that it would have a highly prejudicial impact on the jury. The court rejected these arguments, remarking that the challenged evidence was "all part of one transaction

. . . . We can't sanitize a criminal case to walk a criminal out." [21]

We are unable to subscribe to the broad proposition that evidence of other offenses may be introduced simply because it recounts events temporally related to the commission of a crime for which the accused is on trial.[22] The long-established rule requires a pre-admission showing that the evidence is relevant and that its probative value is not substantially outweighed by the probability of unfair prejudice to the accused.[23] We have no difficulty in perceiving that the evidence here under attack was pertinent to an essential element of the obstruction charge; [24] to prove the offense, the Government had to demonstrate that appellant had the specific intent to obstruct.[25] From the videotaped manifestations of his purpose with respect to the credit cards and the additional check,[26] the jury could infer more readily that he also had the statutorily-required criminal intent with respect to the check issued by County Decorators. That evidence could have been taken as an additional indication of appellant's knowledge that he was not lawfully in possession of the latter check and that, like the other items, he had decided to hold and later sell it, and thus convert it to his

apartment complex who purloined mail packages from cabinet shelf in rental office); *United States v. Maxwell, supra* note 16, 137 F.Supp. at 305 (referring to "cases involv[ing] bell-boys embezzling 'letters' containing checks delivered to them for distribution to guests"). *See also United States v. McCready, supra* note 16, 11 F. at 236.

**19.** Because of irrelevance, the District Court properly excluded testimony by appellant's mother that mail addressed to the Warner Company had previously been delivered to the apartment, and that she or one of her children customarily brought the mail inside the apartment from the mailbox.

**20.** Even were it true, as appellant claims, that the Government's proof showed no more than embezzlement, one might wonder whether that *sort of variance from the precise charge of the indictment would necessitate reversal. See Jackson v. United States,* 123 U.S.App.D.C. 276, 278, 359 F.2d 260, 262, *cert. denied,* 385 U.S. 877, 87 S.Ct. 157, 17 L.Ed.2d 104 (1966). *In the view we take of the scope of § 1702's ban on "taking,"* we do not reach that question.

**21.** Tr. 9.

**22.** See generally the discussion of res gestae in D. Louisell & C. Mueller, 2 Federal Evidence, § 140(2) (1978); Slough & Knightly, *Other Vices, Other Crimes,* 41 Iowa L.Rev. 325, 331–332 (1956).

**23.** See, *e. g., United States v. Haldeman,* 181 U.S.App.D.C. 254, 311–312 & n. 145, 559 F.2d 31, 88–89 & n. 145 (1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). See also Fed.R.Evid. 401, 403, 404(b).

**24.** At the time the District Court ruled, of course, appellant was on trial for theft from the mail also. It is unnecessary to consider whether anything associated with that charge provided a basis for admission of the challenged evidence since we find it admissible in connection with the obstruction charge.

**25.** See note 9 *supra.*

**26.** See text *supra* following note 6.

own purposes. That knowledge in turn tended to show that appellant had the requisite intent, that of intentionally removing the envelope and check from the conduit of postal delivery.

The question remains, however, whether the probative worth of this evidence to the Government was substantially outbalanced by the danger of unfair prejudice to appellant. The fact is that, without any other-crimes evidence whatever, the Government had weighty evidence of criminal intent vis-a-vis the County Decorators check and perhaps, by the same token, no great need for more proof on that score. Officer Lilly had testified that appellant came to the loft, told him that the check had been misdelivered, and then sold it to him. Acceptable footage of the videotape, from which the dealing over the credit cards and the other check possibly could have been excised,[27] corroborated significant parts though not all of the officer's testimony. Given that much uncontested evidence, necessity for introduction of other-crimes evidence might seem marginal.

At the same time, however, the threat of unfair prejudice to appellant resulting therefrom appears even smaller.[28] The challenged evidence was not inflammatory, and the identity of the person bearing the County Decorators check and most of his physical activity respecting it were unmistakable. Thus the contemporaneous other-crimes evidence, quite relevant on the ques-

tion of intent, was not used to bolster a case feeble on other issues by besmirching the character of the accused. Under the circumstances, we are persuaded that the District Court's action in letting it in was within its discretion.

We find the question closer, however, on the admission of evidence of subsequent criminal conduct by appellant—Officer Lilly's statement that appellant later returned, not only to repay the loan, but also "to sell me some other items."[29] The prosecutor argued at trial that the defense had "opened the door" by asking the officer whether he made a loan to appellant.[30] We have warned that "[t]he doctrine of curative admissibility is one dangerously prone to overuse,"[31] and we think its application would have extended it too far here.[32] Rebuttal evidence is admissible only to the extent necessary to combat evidence in chief,[33] and defense counsel had questioned Officer Lilly only about the making of a loan. The open-door theory provides no basis for legitimatizing the completely unrelated rebuttal statement that appellant had endeavored to arrange another sale presumably of contraband.

Nonetheless, the statement does not present an occasion for reversal. Proof of subsequent acts may become allowable when they reflect a prior state of mind, particularly where they are fairly recent and in some significant way connected with prior material events.[34] Evidence that ap-

27. We have viewed the videotape in its entirety. Appellant argues that the part showing him selling the credit cards and the other check should have been deleted. Though abridgement of the videotape might have been technically feasible, the essential character of the sale transaction recorded would certainly have been materially if indeed not misleadingly altered.

28. Relevant evidence may be excluded on a balance of probative value against prejudicial proclivity only if the weight is on the side of "danger of unfair prejudice. . . ." Fed.R. Evid. 403. " 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Advisory Committee's Note to Federal Rule of Evidence 403.

29. See text *supra* at note 6.

30. Tr. 44.

31. *United States v. McClain*, 142 U.S.App.D.C. 213, 216, 440 F.2d 241, 244 (1971).

32. The District Court did not articulate the ground upon which it allowed the impugned statement to remain in evidence.

33. *United States v. Winston*, 145 U.S.App.D.C. 67, 71, 447 F.2d 1236, 1240 (1971).

34. *United States v. Gallo*, 177 U.S.App.D.C. 214, 217 218, 543 F.2d 361, 364 365 (1976); see *Copeland v. United States*, 80 U.S.App.D.C. 308 309, 152 F.2d 769 770 (1945), *cert. denied*, 328 U.S. 841, 66 S.Ct. 1010, 90 L.Ed. 1615 (1946).

pellant undertook a second sale tends, though in smaller degree, to additionally serve the function of the evidence of the first sale,[35] and thus could have contributed to the jury's store of information. We are mindful that the challenged statement was not subjected to any sort of balancing[36] but, given the substantial proof provided by the videotape, the second-sale remark was merely cumulative, and hardly could it have disturbed the value-prejudice balance. Indeed, with the videotape before the jury, the Government's case can only be characterized as no less than overwhelming and, like a pebble at the foot of Mount Rushmore, the presence or the removal of the officer's remark could not appreciably add to or detract from the whole. In the context of the entire case, then, we can say with "fair assurance" that admission of this evidence was harmless.[37]

## IV

■ Lastly, we reach appellant's contention that if the events videotaped were admissible at all, they could properly have been considered by the jury only for a narrow purpose, and thus that the District Court should have given a suitable limiting instruction. Of course, when other-crimes evidence is let in, such an instruction is normally for the asking.[38] But appellant made no request therefor at trial;[39] rather, he argues that the absence of such an in-

struction was plain error requiring reversal.[40] In the unique circumstances confronting us, we disagree.

The testimony of Officer Lilly and the record made by the videotape presented to the jury the events transpiring in the loft of the warehouse, including prominently appellant's admissions respecting the County Decorators check. That demonstration, which appellant did not rebut in the least,[41] established beyond doubt that appellant had come by the envelope containing that check after its mailing and before its receipt by the addressee, thus leaving for the jury only one question to decide: whether appellant had appropriated the check with the specific intent proscribed by the statute. The evidence under attack was introduced in an effort to show that appellant did entertain that intent, and we have said that on that point it was relevant. So, while appellant is correct in his position that intent was the sole issue on which that evidence could rightly have been utilized, he overlooks the vital fact that there really was no other issue for the jury to pass on.

The objective of any limiting instruction is to confine within legitimate bounds any treatment of evidence admissible only for special purposes. Here there was no danger of a spillover into forbidden areas,[42] for as a practical matter there was no other area for the jury to enter. Intent, and intent alone, was the jury's single concern,

**35.** See text *supra* following notes 25–26.

**36.** See text *supra* at note 23.

**37.** *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566–1567 (1946); *United States v. James,* 181 U.S. App.D.C. 55, 64, 555 F.2d 992, 1001 (1977).

**38.** *E. g., United States v. Fench,* 152 U.S.App. D.C. 325, 332, 470 F.2d 1234, 1241 (1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

**39.** See Fed.R.Crim.P. 30.

**40.** See Fed.R.Crim.P. 52(b). See also, *e. g., United States v. Herron,* 185 U.S.App.D.C. 403, 408–409, 567 F.2d 510, 515–516 (1977); *United States v. Freeman,* 169 U.S.App.D.C. 73, 76, 514 F.2d 1314, 1317 (1975); *United States v. Henson,* 159 U.S.App.D.C. 32, 39–40 n. 6, 486

F.2d 1292, 1299–1300 n. 6 (*en banc* 1973); *United States v. Fench, supra* note 38, 152 U.S.App.D.C. at 332, 470 F.2d at 1241; *United States v. Thomas,* 148 U.S.App.D.C. 148, 150–151, 459 F.2d 1172, 1174–1175 (1972); *United States v. Bobbitt,* 146 U.S.App.D.C. 224, 228–231, 450 F.2d 685, 689–692; *United States v. McClain, supra* note 31, 142 U.S.App.D.C. at 217–218, 440 F.2d at 245–246.

**41.** As previously noted, appellant's mother, who was not present in the loft, was the only defense witness.

**42.** We have already made clear that the court is not required to render a limiting instruction *sua sponte* simply because the evidence may tend to suggest that the accused is an unsavory person. *United States v. Bobbitt, supra* note 40, 146 U.S.App.D.C. at 232, 450 F.2d at 693.

and on its probe into intent the challenged evidence was legally pertinent. In sum, this restricted role of the evidence was the only function that the jury could sensibly have assigned to it.

It follows, then, that a limiting instruction would have had little or no utility here. Indeed, its chief accomplishment might well have been simply a highlighting of the videotape and the related testimony of Officer Lilly. And since the defense did not see fit to call for such an instruction at trial, we see no basis for holding that the court was plainly wrong in failing to give one. It is well known that, even when a limiting instruction is likely to aid the accused's cause, astute defense counsel may prefer tactically to forego it in the interest of avoiding its inevitable focus of the jury's attention on unfavorable evidence.[43] Certainly in a situation of the sort now before us, it is for counsel to ask, and not for the court to volunteer.

The judgment appealed from is

*Affirmed.*

---

**43.** *Id.* at 228, 232, 450 F.2d at 689, 693.