**UNITED STATES of America**

v.

**Charles W. LEWIS, Appellant.**

**No. 82–1245.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1982.

Decided Nov. 12, 1982.

Mark Nozette, Washington, D.C. (appointed by this court) for appellant.

Anita J. Stephens, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C. at the time the brief was filed, and Judith Hetherton and Eric B. Marcy, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before ROBINSON, Chief Judge, and WRIGHT and WALD, Circuit Judges.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

J. SKELLY WRIGHT, Circuit Judge:

Appellant, Charles W. Lewis, was indicted on twenty counts of unlawfully transporting falsely made, forged, and altered securities in interstate commerce in viola-

tion of 18 U.S.C. § 2314 (1976).[1] After a two-day jury trial in the District Court, appellant was convicted on all twenty counts. The court sentenced appellant to twenty concurrent terms of not less than fifteen months and not more than seven and one-half years of incarceration.

During the trial, evidence concerning possible crimes and illegal acts other than those charged in the indictment was admitted into evidence. At the close of trial, the court instructed the jury that such evidence could only be used for a limited purpose—to show that appellant had a plan which included the counts charged in the indictment. Appellant claims that this evidence should either not have been admitted because it was irrelevant and overly prejudicial or the admission should have been immediately preceded by an appropriate limiting instruction. Because we cannot find that appellant was substantially prejudiced by either the admission of the extrinsic evidence or the timing of the limiting instruction, we affirm the convictions.

## I. THE TRIAL

In December 1980, Travelers Express Company, Inc., of Minneapolis, Minnesota, shipped approximately 2,000 blank money orders from its New Jersey regional office to the National Bank of Washington via United Parcel Service (UPS). Each money order had a maximum value of $500, the actual payable to be encoded by a bank teller or salesperson, using a special check-writing machine, at the time of the purchase. These money orders never arrived at their intended destination[2]; so on January 15, 1981, National Bank of Washington issued a stop-payment order on them.

Between April 9 and April 28, 1981, twenty of these missing orders were negotiated for cash at the DuPont Circle branch of Guardian Federal Savings & Loan (Guardian).[3] These money orders had a total face value of $8,324.73, and they ranged in amount from $314.00 to $493.00. Each had been processed through a special check-writing machine, endorsed, and then cashed. Each was presented to a Guardian teller by another Guardian employee—either Tonia Pearcy, the bank's Customer Service Representative, or Brenda Williams, the Head Teller. At no time did appellant visit Guardian or attempt to cash personally any of the orders for which he was indicted. At trial, however, the government tried to link appellant both to these twenty orders—through the testimony of Denise Lewis, Tonia Pearcy, and Brenda Williams—and to other orders—through the testimony of Yvette Bottoms, Ronald Nicks, and Wendell Williams. The government thereby hoped to show that appellant was the mastermind of a common scheme.

Denise Lewis testified that appellant asked her to recruit other persons to assist him in passing stolen money orders.[4] Ms. Lewis stated that appellant asked her if Ms. Pearcy or Ms. Williams would be willing to cash "hot" money orders at the bank at which they were employed. Ms. Lewis called Ms. Williams, obtained the name of an account at Guardian, filled out the money order, and took it to Ms. Williams, who then cashed it. On subsequent occasions, Ms. Lewis enlisted the aid of Ms. Pearcy to cash the stolen money orders. For each transaction, appellant allegedly received half of the money, and the remainder went to Ms. Lewis and her helpers. Ms. Lewis

---

1. 18 U.S.C. § 2314 provides, in pertinent part, that:

    Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; * * *

    Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. UPS has been unable to determine how the shipment was lost. Transcript (Tr.) at 14.

3. The 20 orders that were negotiated at Guardian were matched by their serial numbers to the missing shipment. However, the government made no attempt to establish which individual orders were involved in each transaction testified about at trial.

4. Denise Lewis lives in the same apartment building as appellant's girlfriend. She is not related to appellant. Tr. at 123.

pleaded guilty to one count of forgery and received probation.[5]

Tonia Pearcy corroborated her contact with Ms. Lewis and her role in the illegal scheme. She admitted to participating in three such transactions, two with Ms. Lewis alone, and one with both Ms. Lewis and Brenda Williams. Ms. Pearcy pleaded guilty to one count of misapplication of funds and received two years probation.[6]

Brenda Williams similarly corroborated her contact with Ms. Lewis and her role in the illegal scheme. She admitted that on three different occasions she had cashed orders that Denise Lewis gave to her. Each time she would return the proceeds to Ms. Lewis and then receive her share. She pleaded guilty to one count of misapplication of bank funds and received probation.[7]

The government also introduced substantial testimony concerning other stolen money orders that were *not* charged in the indictment. These money orders could, however, be inferred to have come from the same missing shipment as the twenty orders charged in the indictment. Therefore, though the government did not charge appellant with a continuing offense, it introduced the testimony of Yvette Bottoms, Ronald Nicks, and Wendell Williams to show that appellant was the mastermind of a common scheme.

Yvette Bottoms testified that Denise Lewis called her and asked if she knew a way to get some money orders cashed. She then met with Ms. Lewis and appellant at Ms. Lewis' home and was given five or six money orders to cash. Ms. Bottoms gave one of these to Tonia Pearcy, and returned the remainder to appellant after unsuccess-

fully attempting to cash them. Appellant gave Ms. Bottoms $100 for helping to cash the one money order. Ms. Bottoms pleaded guilty to a misdemeanor and received probation.[8]

Ronald Nicks testified that sometime in January or February 1981 appellant told him that a parcel post truck had turned over and that he had gotten some money orders from it.[9] In April 1981, appellant gave him two money orders, which Mr. Nicks returned after failing in his efforts to cash them.[10] In June 1981, appellant temporarily moved into Mr. Nicks' home; during that time, Mr. Nicks discovered appellant in possession of some blank money orders and a check-writing machine.[11] Mr. Nicks also testified that appellant was aware that Federal Bureau of Investigation (FBI) agents had begun to ask questions, and that appellant warned Mr. Nicks not to say anything.[12] Mr. Nicks was not prosecuted because he cooperated with the government.[13]

Wendell Williams testified that he also saw appellant with a check-writing machine and that appellant gave him seventeen money orders to cash for him. Williams was unable to negotiate those money orders, however, and returned them to appellant.[14] Mr. Williams was not prosecuted by the government.[15]

At trial, appellant objected only to Wendell Williams' testimony, and upon losing that objection did not ask for any type of limiting instruction.[16] Appellant objected to Mr. Williams' testimony on the basis that the evidence was of "other crimes," use of which the rules of evidence generally pro-

5. Tr. at 124–127.

6. Tr. at 19, 31, and 43–46.

7. Tr. at 79–83.

8. Tr. at 53–67.

9. Tr. at 157.

10. Tr. at 156.

11. Mr. Nicks told appellant to take the money orders and the machine out of the apartment. The next morning appellant left, taking the

money orders and the check-writing machine with him. Tr. at 152–155.

12. Tr. at 151–155, 157–158, 161.

13. Tr. at 151–156, 160–161.

14. Tr. at 164–165, 171.

15. Tr. at 172.

16. Tr. at 102, 107–112.

hibit.[17] The government claimed, however, that the evidence was necessary to prove that appellant was the person masterminding the money order "scam."[18] After duly considering the arguments, the court admitted the evidence.[19] At the close of trial, the court instructed the jury that it could use the evidence concerning the other money orders only to infer appellant's participation in a scheme or plan which included the offense for which he was on trial, and not to infer appellant's guilt in any other manner.[20] The jury convicted appellant of all twenty single counts in the indictment, and this appeal followed.

## II. EVIDENCE OF CRIMES NOT CHARGED

■■■ Our review of the District Court's admission of testimony concerning crimes not charged in the indictment must follow certain basic principles of evidence law. The fundamental test for admitting evidence is its relevance: it must make "the existence of any fact * * * more or less probable than it would be without the evidence." Fed.R.Evid. 401. All relevant evidence is admissible, with certain specific evidentiary, procedural, statutory, and constitutional exceptions, Fed.R.Evid. 402, unless its probative value is substantially outweighed by its prejudicial impact. Fed.R. Evid. 403. But even the admission of irrelevant or prejudicial evidence does not constitute reversible error if a party did not object and offer proof as to why the evidence should not have been admitted. Fed. R.Evid. 103(a)(1) & (2). In the absence of an objection, reversible error will be found only if defects affecting substantial rights were obvious on the record. Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d). Indeed, even when potential error is brought to the trial court's attention by counsel's objection, much deference will be accorded to that court's discretionary disposition of the matter. *United States v. DeLoach,* 654 F.2d 763, 769 (D.C.Cir.1980); *United States v. Childs,* 598 F.2d 169, 173 (D.C.Cir.1979).

### A. Relevancy of Extrinsic Evidence

Appellant first argues that the extrinsic evidence was irrelevant and should not have been admitted. Courts generally have concluded that "the doing of similar acts" is not relevant to the doing of a particular act. 2 J. WIGMORE, EVIDENCE § 304 at 249–251 (Chadbourn rev. 1979). Under this principle of law, appellant claims that examples of his allegedly passing other money orders cannot be used to prove that he passed the twenty orders which were the subject of the indictment.

■■■ Appellant's statement of the law is correct, but beside the point. The extrinsic evidence was not admitted to show that appellant committed similar acts and that he therefore committed the indicted acts. Rather, the testimony was admitted to show that appellant had a scheme which included the offenses for which he was on trial.[21] The rules of evidence specifically establish the relevancy of extrinsic evidence submitted to prove "motive, opportunity, intent, preparation, *plan,* knowledge, identity, or absence of mistake or accident."[22] The testimony of Ms. Bottoms, Mr. Nicks and Mr. Williams substantiated appellant's possession of the needed check-writing machine, linked appellant to the stolen money orders, and showed appellant had a system

---

17. Fed.R.Evid. 404(b).

18. Tr. at 106–112.

19. Tr. at 112.

20. The court instructed the jury as follows: And the court instructs you that this evidence was admitted only for your consideration of whether it shows or tends to show that the defendant had a scheme or plan which included the offense for which he's now on trial. You are not required to accept this evidence, and whether you accept it or not is a matter for you to decide. But if you decide to accept it, you may do so only for the limited purpose that I have just explained, and you may not consider it as tending to show in any other way the defendant's guilt of this specific offense as listed in this indictment.
Tr. at 232.

21. The court made clear this distinction in its instruction to the jury. *See* note 20 *supra.*

22. Fed.R.Evid. 404(b) (emphasis added).

for passing such orders. The testimony thereby supported the existence of a "definite project intended to facilitate completion of the crime in question." *United States v. O'Connor,* 580 F.2d 38, 42 (D.C.Cir. 1978). *See also United States v. Murphy,* 480 F.2d 256, 260 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973) (no plain error in admitting evidence of other bribes); *United States v. Light,* 394 F.2d 908 (2d Cir.1968) (government permitted to prove cover-up of securities fraud with evidence that included unindicted instances of larceny and forgery); *Tomlinson v. United States,* 93 F.2d 652 (D.C.Cir.1937) (admitting testimony of earlier planning to commit same crime). This evidence covered the same time period as the transactions charged in the indictment, showed appellant's possession of the tools necessary to commit the crimes charged, and tended to show a "design or plan" to commit crimes of this sort. 2 J. WIGMORE, EVIDENCE §§ 237, 304, 305 (Chadbourn rev. 1979); *see Payne v. United States,* 294 F.2d 723 (D.C. Cir.1961) (admitting evidence showing defendant's possession of tools of "confidence man"). The witnesses' testimony was therefore relevant.[23]

### B. *Prejudicial Impact*

Even relevant evidence concerning an unlawful plan or scheme can be excluded, however, if the danger of undue prejudice outweighs the probative value of the evidence. Fed.R.Evid. 403. This balancing should include such considerations as "other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Fed.R.Evid. 404 advisory committee note. In general, when evidence of other crimes is offered, courts presume prejudice will occur. *Drew v. United States,* 331 F.2d 85, 89–90 (D.C.Cir.1964). *Accord, United States v. Anderson,* 509 F.2d 312 (D.C.Cir.1974); *United States v. McClain,* 440 F.2d 241 (D.C.Cir.1971); *United States v. Bussey,* 432 F.2d 1330 (D.C.Cir. 1970). But when the evidence concerns a plan or scheme, courts also frequently find that the probative value of the "other crimes" evidence outweighs the prejudice. *See Drew v. United States, supra,* 331 F.2d at 90. The trial court's weighing of the costs and benefits of such evidence will be disturbed only in cases of abuse of discretion. *United States v. Foskey,* 636 F.2d 517, 525 (D.C.Cir.1980); *Miller v. Poretsky,* 595 F.2d 780, 783 (D.C.Cir.1978); *United States v. Day,* 591 F.2d 861, 878–879 (D.C. Cir.1978). And when no objections are raised, reversible error will be found only if there is plain error. Fed.R.Evid. 103(d).

Appellant raised a timely objection to Wendell Williams' testimony.[24] At the time of the objection, however, Ms. Bottoms had already testified and much of the prejudicial evidence had already been heard.[25] The District Court openly assessed the probative value and potential impact of the evidence. The transcript includes a long colloquy between counsel and the District Court regarding both Wendell Williams' testimony and another witness' testimony.[26] After extensive argument, the District Court ruled that Wendell Williams could testify,

---

**23.** Indeed, appellant's counsel did not even object during trial that Nicks' or Bottoms' testimony was irrelevant. The general rule is that reversible error occurs only if counsel points out the error to the court. Fed.R.Evid. 103. But appellant claims that an objection and an offer of proof were not possible in this case because counsel had to reasonably assume that the prosecution would establish the relevance of each of these incidents as the trial progressed.

This contention is obviously untenable. If appellant could not determine the relevancy of the evidence at this stage, then neither could the court. The burden was on appellant to ask the prosecution to establish the relevancy of the evidence *before* its admission; *post hoc* attacks do not suffice. If this were not the rule, all evidence that is arguably irrelevant would become subject to challenge on appeal. Appellant should have objected to the proffered evidence, asked the prosecution to explain its relevance out of the jury's presence, and received a ruling from the court.

**24.** Tr. at 102.

**25.** Tr. at 106.

**26.** Tr. at 102–112.

but that the other witness could not.[27] Since the record shows that the District Court evaluated the possible prejudice with great care, we cannot say that the court abused its discretion in allowing the admission of that evidence.

Appellant did not raise any objections to the testimony of either Yvette Bottoms or Ronald Nicks. As a result, the District Court had no opportunity to conduct the balancing called for in Rule 403. Fed.R. Evid. 403. Nonetheless, appellant claims that substantial prejudice occurred because the evidence was not "necessary,"[28] and that its admission was therefore in plain error. Fed.R.Evid. 103(d). *See United States v. Shelton*, 628 F.2d 54, 56 (D.C.Cir. 1980).

This argument is clearly contradicted by the evidence. The government's primary evidence concerning the twenty money orders for which appellant was indicted involved testimony by three co-participants whose credibility was clearly subject to attack. By reinforcing its case with additional testimony showing the existence of a plan or scheme, the government sought to ensure the quantum of evidence necessary to support a conviction. *See id.* at 57; *United States v. Gallo*, 543 F.2d 361, 365 (D.C.Cir.1976). This evidence, if believed, could prove something that the other evidence could not prove: that appellant, not Denise Lewis, was the mastermind of the money order "scam."[29] The evidence cannot, therefore, be considered either cumulative or unnecessary.[30] Indeed, there was no other way that the government could show that each of the other participants had been the spokes of this criminal wheel and that appellant had been the hub around which these spokes had turned.

Nor is the government, as appellant asserts, restricted to establishing appellant's guilt beyond a reasonable doubt solely on the basis of crimes charged in the indictment. This court has held that even though only one offense may be charged in each count of an indictment, evidence of other similar acts is admissible to show design or plan. *See, e.g., Payne v. United States, supra*, 294 F.2d at 726; *Martin v. United States*, 127 F.2d 865, 869 (D.C.Cir.1942) (Stephens, J., concurring) ("in certain classes of cases collateral offenses may be shown as reflecting * * * a plan or method, * * * and * * * that the accused persons committed such other offenses, and in so doing followed the same plan or method as is shown to have been followed in the commission of the crime charged in the indictment"). The evidence in this case proves just such a plan. Appellant had possession of the stolen money orders, a check-writing machine with which to encode amounts, and an arrangement with Denise Lewis and her

27. The other witness would have testified that appellant gave him some money orders as collateral for cocaine. Tr. at 103. Although the government represented that it intended for the witness to testify only that he had received money orders, the court decided that defense counsel would be unable to cross-examine him effectively without mentioning the cocaine. Without this opportunity to cross-examine appellant would have been substantially prejudiced.

28. Tr. at 106–107.

29. Appellant's avowed intention at trial was to prove that Denise Lewis, and not he, had masterminded the scheme. Tr. at 148.

30. At trial, appellant conceded that the evidence clearly and convincingly connected him to the other money orders. Tr. at 106–107. On appeal, he argues that the evidence was not clear and convincing because it did not show that the "other crimes" had been completed.

Brief of appellant at 22–23. This new argument violates the rule against raising completely new issues on appeal. *See Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131 (3d Cir.1977); *Granite City Steel Co. v. Koppers Co.*, 419 F.2d 1289 (7th Cir.1969). Since appellant did not object to the evidence's admission, there was no call for the court to make any special inquiry into the clarity of the evidence, and reversible error can be found only if "plain error occurred." Fed.R.Evid. 103. No such "plain error" can be found. The evidence was reasonably admitted to show that appellant was part of a scheme; the government need not show that the "other crimes" have been consummated if the evidence shows that appellant had the means to commit the indicted crimes, and that the indicted crimes were part of a broader scheme. *Payne v. United States*, 294 F.2d 723, 726 (D.C. Cir.1961).

friends to pass these orders at a bank. The evidence is admissible even though appellant was charged only with single counts of a continuing offense, and it is not plain error for the court to admit evidence of a plan in which those single offenses were only isolated examples.

### III. THE LIMITING INSTRUCTION

■ Appellant further argues that the District Court committed reversible error in not instructing the jury, at the time the evidence was offered, that it could use the evidence only for a limited purpose. Appellant did not ask for such an instruction during the trial,[31] but claims that *United States v. Bussey, supra,* 432 F.2d 1330, and *United States v. McClain, supra,* 440 F.2d 241, nonetheless required one. In appellant's view, these cases establish the broad prophylactic rule that a trial court must give an immediate though unrequested cautionary instruction. We disagree.

In *Bussey,* the government attempted to discredit the defendant's alibi by presenting, over objections, two witnesses who testified to the defendant's participation in a robbery other than the one for which he was on trial. The court held both that it was prejudicial error to admit this evidence and that a limiting instruction in the charge-in-chief was not sufficient to cure this prejudice. 432 F.2d at 1334. In *McClain,* the trial court admitted evidence that defendant had struck a murder victim seven months prior to the alleged homicide as proof of the defendant's malice.[32] The court held that it was reversible error for the trial court not to have given an unrequested limiting instruction where there had been extensive colloquy at the bench concerning the admissibility of such evidence and where the trial court had already indicated that the prejudicial effect outweighed the probative value. 440 F.2d at

245–46. The court concluded with this broad language:

> We would hold that whenever evidence is admitted only for a limited purpose, it is plain error, in the absence of manifest waiver, to omit an immediate cautioning instruction. The danger of prejudicial effect from such evidence is so great that only an immediate and contemporaneous instruction can be considered sufficient to protect defendants. * * *

440 F.2d at 246. Taken literally, *McClain* would have required an immediate cautioning instruction every time evidence was admitted that the jury could conceivably use improperly, even in the absence of a defense objection. Thus, the burden would be on the trial court, not defense counsel, to guard against any potential misuse of evidence.

But subsequent panels of this court have not imposed such a heavy burden on the trial judge and instead have given *McClain* a far more limited reading. In *United States v. Bobbitt,* 450 F.2d 685 (D.C.Cir. 1971), this court held that the failure to give an unrequested limiting instruction on the use of defendant's prior acts was not reversible error when the only disputed issue in the case was defendant's motive to commit the alleged homicide. Similarly, in *United States v. Fench,* 470 F.2d 1234 (D.C. Cir.1972), this court did not find reversible error where the trial judge had provided a cautioning instruction the day *after* admitting evidence that was not particularly prejudicial. Most recently, in *United States v. Childs, supra,* this court held that the trial court could not be reversed for failing to give an unrequested limiting instruction where "other crimes" evidence could be used for only one purpose, and thus could

---

**31.** Such an instruction is normally given freely. *United States v. Fench,* 470 F.2d 1234, 1241 (D.C.Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

**32.** The trial court had first held that the evidence was too prejudicial to be admitted. 440 F.2d at 242. However, defense counsel later opened up the door by asking the deceased's

daughter whether she had witnessed any prior altercations between the defendant and the victim. At that point, the trial court stepped in and asked questions that brought out the prejudicial evidence. 440 F.2d at 243. The prosecuting attorney then proceeded to examine the witness along the same lines. *Id.* at 244.

not pose a "danger of a spillover into forbidden areas." [33]

When all the dust is settled and pushed aside, it becomes clear that *McClain* and its progeny find that reversible error occurs only when evidence that substantially prejudices defendant is admitted without an immediate cautioning instruction as to its permissible uses.[34] Thus, in *United States v. Freeman,* 514 F.2d 1314, 1320–1321 (D.C. Cir.1975), the court reversed a conviction because evidence which would have substantially swayed the jury was admitted without a cautionary instruction. *Freeman* noted that a cautionary instruction is required when evidence that may have a "highly prejudicial" effect is admitted. *Id.* at 1317 n. 21. But when evidence is admitted that does not result in substantial prejudice, the failure to give an immediate cautionary instruction does not constitute reversible error. *See United States v. Henson,* 486 F.2d 1292, 1299–1300 n. 6 (D.C.Cir. 1973) *(en banc).*

*McClain* and its progeny thus create a simple scheme which allocates the responsibility for guarding against the misuse of evidence by a jury between trial court and trial counsel. During trial, counsel fairly bears the heavier burden of guarding against the misuse of evidence.[35] Trial counsel must generally request a limiting instruction whenever potentially inflammatory evidence can be put to an improper use; reversible error arises if the court fails to grant such a request.[36] The court must give such an instruction *sua sponte* only if the evidence has the potential for substantially prejudicing the defendant. Before giving the instruction, however, the court must offer defense counsel the opportunity to waive it. Failure to give defense counsel this opportunity also constitutes reversible error.[37]

We cannot say that substantial prejudice cries out from the admission of any of the evidence in this case. None of it was so inflammatory as to incite the jury against the defendant. The testimony merely strengthened the government's attempt to link defendant to the indicted money orders. It showed that defendant had the means to commit the charged crimes, and that the charged crimes were instances of a larger scheme. The District Court carefully supervised the presentation of the evidence, admitting some, excluding some.[38] The court also provided an adequate cautionary instruction during the final charge to the jury, and thereby attempted to mitigate whatever prejudicial effect the evidence might have had.[39] Under such circumstances, the failure to give an immediate unrequested limiting instruction does not require reversal.

## IV. CONCLUSION

Because we cannot find that appellant was substantially prejudiced by either the admission of the evidence or the timing of the limiting instruction, we affirm the conviction of Charles W. Lewis.

*So ordered.*

---

**33.** *United States v. Childs,* 598 F.2d 169, 175 (D.C.Cir.1979). *See also United States v. Thomas,* 459 F.2d 1172 (D.C.Cir.1972).

**34.** For example, when a party seeks to impeach a witness by prior inconsistent statements, it is plain error not to give an immediate limiting instruction if the jury could give substantive effect to the impeachment evidence. *Compare Jones v. United States,* 385 F.2d 296 (D.C.Cir. 1967) (reversible error), *with United States v. Herron,* 567 F.2d 510 (D.C.Cir.1977) (no error if evidence offered not simply for its effect toward impeachment).

**35.** It is defense counsel's job to alert the court to potentially prejudicial evidence and to ways to mitigate that prejudice.

**36.** *United States v. Childs, supra* note 33, 598 F.2d at 175.

**37.** Defense counsel may wish to forego the instruction because it might hurt the defendant to call attention to the prejudicial evidence. *United States v. McClain,* 440 F.2d 241, 245 (D.C.Cir.1971). Defense counsel must have the opportunity to make this judgment.

**38.** *See* note 27 *supra* and accompanying text.

**39.** Tr. at 232.